IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JAMES IRVIN HILL                                                                                   PLAINTIFF

v.                                                                         CIVIL ACTION NO. 5:14-cv-85-MTP

MANAGEMENT TRAINING CORPORATION, ET AL.                         DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion to Dismiss [52] and Motion for Summary Judgment [57] filed by Defendant Larry Lee and the Motion for Partial Summary Judgment [53] and Motion for Summary Judgment [59] filed by Defendants Management Training Corporation ("MTC"), Frank Shaw, Gabriel Walker, Tira Jackson, Roscoe Barnes, Ella Scott, Tracy Arbuthnot,[1] and Sheidra Arrington. Having considered the Motions, the record, and the applicable law, the Court finds that Motions [52] [53] [59] should be granted and Motion [57] should be denied as moot.

## BACKGROUND

On October 8, 2014, Plaintiff James Irvin Hill, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. In his complaint and as clarified in his testimony at the *Spears* hearing, Plaintiff asserts claims against Defendants Chaplain Roscoe Barnes, Tira Jackson, and Frank Shaw for violations of his First Amendment right to free exercise of religion;

---

[1] In his Complaint, Plaintiff named "Tracy Arbutknot" as a Defendant, but in her Answer [35], Defendant Arbuthnot provided the correct spelling of her name.

1

claims against Defendants Shaw, Sheidra Arrington, and Tracy Arbuthnot for violations of his due process rights; and claims against Defendants Jackson, Shaw, MTC, Gabriel Walker, Ella Scott, and Larry Lee for exposing him to unconstitutional living conditions.

*First Amendment*

According to Plaintiff, he was incarcerated at WCCF from August 15, 2013, until August 18, 2014. During that time, WCCF allegedly initiated an expansive lockdown due to several violent incidents. Plaintiff alleges that he is Catholic and during his incarceration at WCCF he was only able to attend one religious service. Plaintiff alleges that he discussed the lack of religious services with Chaplain Roscoe Barnes, and Chaplin Barnes stated, "I can only do what they let me do." Plaintiff also alleges that he filed grievances through the administrative remedies program regarding religious services. Tira Jackson allegedly answered these grievances, but failed to rectify the situation. Plaintiff also claims that Warden Frank Shaw should have seen to it that an adequate number of religious services were provided.

*Due Process*

According to Plaintiff, prior to his transfer to WCCF, he was issued a rule violation report ("RVR") for a failed drug test. As a result of the RVR, Plaintiff was allegedly placed in restrictive custody or "C-Custody" and his trusty status was revoked, making him ineligible to earn "trusty time." Plaintiff alleges that this punishment should have lasted for six months and should have ended by January 29, 2014. Plaintiff alleges that in December, 2013, Sheidra Arrington issued Plaintiff an unwarranted RVR for threatening a correctional officer, but he was never afforded a hearing regarding the RVR. According to Plaintiff, his trusty status was not reinstated because of Arrington's unwarranted RVR, despite the fact that a hearing was never

conducted. Plaintiff alleges that Frank Shaw and Tracy Arbuthnot were aware that his trusty status should have been reinstated on January 29, 2014. According to Plaintiff, his trusty status was reinstated on May 27, 2014. Plaintiff claims that he was wrongfully deprived of the ability to earn "trusty time" between January 29, 2014, and May 27, 2014.

*Conditions of Confinement*

According to Plaintiff, WCCF is understaffed and lacks sufficient security. Plaintiff alleges that at certain times, WCCF had pay telephones available to the inmates, but inmates destroyed the telephones. According to Plaintiff, the telephones were replaced twice, but each time they were replaced, inmates would destroy them. Plaintiff claims that MTC should have provided telephones, despite the fact that inmates destroyed them.

According to Plaintiff, inmates at WCCF would also destroy the facilities within their cells, and the maintenance department was unable to keep up with the rate of destruction. Plaintiff alleges that during three months of his incarceration at WCCF, the sink in his cell was broken, and he had no running water in his cell. According to Plaintiff, he was forced to acquire water by filling water bottles from a spigot outside of his cell in a closet. Plaintiff alleges that on several days he went without water. Plaintiff alleges that Assistant Warden Gabriel Walker[2] and Security Chief Ella Scott witnessed Plaintiff without water, but failed to rectify the situation. Plaintiff claims that MTC, Frank Shaw, and Larry Lee[3] were responsible for providing Plaintiff

---

[2] Plaintiff also alleges that Defendant Walker was aware that many fires had occurred at WCCF.

[3] Plaintiff alleges that Larry Lee is the contract monitor for the Mississippi Department of Corrections and is responsible for ensuring that entities such as MTC provide inmates adequate services. Plaintiff alleges that he only saw Defendant Lee at WCCF on one occasion.

running water.

     Plaintiff also alleges that during three months of his incarceration inmates affiliated with gangs took over responsibility for distributing food to the other inmates. Plaintiff alleges that he went without food on several occasions. Plaintiff alleges that MTC, Shaw, and Lee should have ensured that Plaintiff was provided meals at all times.

     Plaintiff alleges that he was only allowed to participate in recreational activities on five occasions. Plaintiff claims that Tira Jackson should have made sure that inmates were able to participate in recreation time on a regular basis.

     As relief, Plaintiff seeks $10,000,000 in compensatory and punitive damages. On July 28, 2015, the Court conducted an omnibus hearing, during which Plaintiff clarified his claims and the Court ordered certain discovery and set a motions deadline. *See* Omnibus Order [46]. On September 11, 2015, Defendant Lee filed his Motion to Dismiss [52]. On September 15, 2015, Defendants MTC, Shaw, Walker, Jackson, Barnes, Scott, Arbuthnot, and Arrington filed their Motion for Partial Summary Judgment [53]. On November 16, 2015, Defendant Lee filed his Motion for Summary Judgment [57]. On November 16, 2015, Defendants MTC, Shaw, Walker, Jackson, Barnes, Scott, Arbuthnot, and Arrington filed their Motion for Summary Judgment [59]. On December 14, 2015, Plaintiff filed a Response [63] to the Motion for Partial Summary Judgment [53].

...
...

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment[4] will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

*First Amendment*

As previously mentioned, Plaintiff asserts claims against Defendants Barnes, Jackson, and Shaw regarding the number of religious services he was able to attend during his incarceration at WCCF. The Free Exercise Clause of the First Amendment requires the

---

[4] Although Defendant Lee filed a Motion to Dismiss [52], the Court will construe the Motion [52] as a motion for summary judgment because matters outside the pleadings are presented and there is no unfair surprise. *See* Fed. R. Civ. P. 12(b); *Liles v. TH Healthcare, Ltd.*, 2014 WL 1813312, at \*\*1-2 (E.D. Tex. May 5, 2014). As Defendants MTC, Shaw, Walker, Jackson, Barnes, Scott, Arbuthnot, and Arrington filed a Motion for Summary Judgment [53] based on the identical issue of exhaustion and Plaintiff relies on materials outside the pleadings to support his position, treating the Motion to Dismiss as a motion for summary judgment creates no prejudice or unfair surprise.

government to refrain from interfering with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As a prisoner, Plaintiff retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, a government regulation may interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Pursuant to *Turner*, courts consider four factors in deciding the reasonableness of a regulation: (1) whether there is a rational relationship between the regulation and the legitimate governmental interest asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Id*. at 89-90. Courts must balance the inmates' right to free exercise of religion with the interest of prison officials charged with complex duties arising from administration of the penal system. Prison officials are afforded great deference in carrying out their complex duties. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). The *Turner* factors are not weighed equally; the first factor is controlling. *See Scott v. Miss. Dep't. of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992); *Mayfield v. Texas Dep't. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

According to Plaintiff, an expansive lockdown was imposed at WCCF due to several violent incidents, and as a result, he was only able to attend one Catholic service during his incarceration from August 15, 2013, to August 18, 2014. Considering the factors set forth in

*Turner*, it is apparent that prison officials had a legitimate penological interest in restricting inmate contact in order to gain control within the facility following several violent incidents.[5] A prisoner's right to free exercise of his religion "may be curtailed in order to achieve legitimate correctional goals or maintain prison security." *O'Lone*, 482 U.S. at 348. "[T]he safety and security of the prison is a legitimate governmental interest, and keeping vulnerable or dangerous prisoners apart is a rational way to achieve this goal." *Fortner v. Lowndes County Adult Detention Center*, 2014 WL 3746642, at *3 (N.D. Miss. July 29, 2014) (holding that detention facility had a legitimate penological interest in prohibiting inmates in protective custody from attending religious services).

Turning to the second factor, Plaintiff has not alleged that prison officials prohibited him from practicing his religion. Plaintiff has not alleged that he was denied the right to practice his religion at any time. The record demonstrates that Plaintiff was able to visit and pray with a Catholic priest. (Chaplain Daily Logs [59-1] at 13, 16.) Plaintiff was able to observe Lent. ([59-1] at 9.) Furthermore, Plaintiff does not alleges that he was prohibited from freely practicing his faith in his cell. Thus, Plaintiff has failed to establish that he was deprived of all forms of religious expression. *See O'Lone*, 482 U.S. at 351-52 (upholding a regulation that prevented inmates from attending Jum'ah services, and recognizing that although there were "no alternative means of attending Jumu'ah [since] respondents' religious beliefs insist that it occur at a particular time," inmates were "not deprived of all forms of religious exercise, but instead

---

[5] In his Complaint [1], Plaintiff describes some of the violent incidents that necessitated an expansive lockdown, including multiple murders and instances of gang members breaking out and remaining out of their cells. ([1] at 6, 17.) Plaintiff states that he fears an inmate assault and fears being killed. ([1] at 6.)

freely observe a number of their religious obligations"); *see also Gauthier v. Anderson*, 2010 WL 2718980, at **6-7 (W.D. La. April 21, 2010).

Given the need to restrict inmate contact during a volatile period, allowing inmates to attend regular religious services would place a burden on the prison and subject officers and inmates to a greater risk of harm. Plaintiff has not offered ready alternatives that would have alleviated those concerns, and the Court cannot easily discern alternatives which would allow inmates to regularly congregate during religious services and assuage the prison officials' legitimate security concerns. Additionally, Plaintiff's claim that Tira Jackson failed to properly respond to his grievance fails to state a claim upon which relief may be granted. *See Dehghani v. Vogelgesang*, 226 Fed. App'x 404, 406 (5th Cir. 2007) (holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation); *Charles v. Nance*, 186 Fed. App'x 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (stating that claim for "failure to investigate" did not amount to a constitutional violation); *see also Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007) (holding that inmates do not have a constitutional right to a grievance procedure, and have no due process liberty interest right to having grievances resolved to their satisfaction). Accordingly, Defendants are entitled to a judgment as a matter of law on Plaintiff's First Amendment claims.

*Due Process*

Plaintiff asserts claims against Defendants Arrington, Shaw, and Arbuthnot regarding the issuance of an allegedly false RVR, which deprived him of the ability to earn "trusty time."

Plaintiff's allegations amount to claims of violations of his due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). In determining whether there has been a due process violation, courts consider (1) whether the party was deprived of a liberty or property interest protected by the Due Process Clause and, if so, (2) whether the party was deprived of that protected interest without constitutionally adequate process. *LaCroix v. Marshall County*, 409 Fed. App'x. 794, 803 (5th Cir. 2011).

Protected liberty interests "are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). A prisoner's liberty interest protected by the Due Process Clause is "generally limited to freedom from restraint which . . . imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The protection afforded by the Due Process Clause does not extend to every adverse or unpleasant condition experienced by an inmate. *Madison*, 104 F.3d at 767.

Plaintiff alleges that as a result of the RVR issued against him, he was wrongfully deprived of the ability to earn "trusty time" between January 29, 2014, and May 27, 2014. This punishment, however, does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. A restriction in privileges or a change in classification does not implicate due process concerns. *Id*. at 767-68; *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Additionally, the denial of the *opportunity* of an inmate to reduce his sentence through

the accrual of earned time credit does not implicate a constitutionally protected liberty interest. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).  Because Plaintiff was not deprived of a constitutionally protected liberty interest, he cannot maintain a claim under the Due Process Clause.  Accordingly, Defendants are entitled to a judgment as a matter of law on Plaintiff's due process claims.

*Conditions of Confinement*

Plaintiff asserts claims against Defendants MTC, Walker, Scott, Shaw, Lee, and Jackson regarding the conditions of his confinement as WCCF.  Defendants argue that Plaintiff failed to exhaust his administrative remedies for his claims based on the conditions of confinement.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983.  "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  The Fifth Circuit has held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.  Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).  A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because

"proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Mississippi Code § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint relating to any aspect of his incarceration. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK[6] at Ch. VIII. The ARP is a two-step process.[7]

Pursuant to the ARP, an inmate is required to submit his initial grievance or request, in writing, to the Legal Claims Adjudicator within thirty days of an alleged incident. If, after screening, the request is accepted into the ARP, it is forwarded to the appropriate official, who will investigate and issue a First Step Response. If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by using ARP Form ARP-2 and sending it to the Legal Claims Adjudicator. A final decision will be made by the Superintendent, Warden, or Community Corrections Director. If the inmate is not satisfied with the Second Step Response, he may file suit in state or federal court. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK at Ch. VIII.

---

[6] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited March 3, 2016).

[7] Effective September 19, 2010, the ARP was changed from a three-step process to a two-step process. *See Threadgill v. Moore*, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

In support of their Motions [52] [53], Defendants submitted Plaintiff's ARP records. (ARP Records [52-1] [53-1].)  Those records demonstrate that Plaintiff submitted several grievances.  In the grievances, however, Plaintiff did not mention the conditions of confinement at issue in this action.  On August 18, 2015, Plaintiff also submitted certain ARP records. (ARP Records [49-1] [49-2] [49-3].)  These records demonstrate that Plaintiff filed a grievance regarding the religious services at the prison; however, he did not complain about the allegedly unconstitutional living conditions at issue in this action.

On December 14, 2015, Plaintiff filed a Response [63], stating that he "did send both steps to the 2 step process of the Administrative Remedy Program . . . ."  Plaintiff does not state when he allegedly completed this process or whether he mentioned the conditions of confinement at issue in this action.  Plaintiff did not provide any additional ARP records. Plaintiff's bare, unsubstantiated allegation simply is not enough to withstand a properly supported motion for summary judgment. *Ryan v. Phillips*, 558 Fed. App'x. 477, 478 (5th Cir. 2014) (inmate's "conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any informal or formal grievance.").

The allegations contained in Plaintiff's grievances were insufficient to put prison officials on notice of his specific conditions of confinement claims.  Plaintiff did not present sufficient information in his grievances to exhaust his administrative remedies with regard to these claims. Accordingly, Defendants are entitled to a judgment as a matter of law, and Plaintiff's conditions

of confinement claims should be dismissed without prejudice.[8]

 IT IS, THEREFORE, ORDERED that:

1. The Motion to Dismiss [52] is GRANTED,

2. The Motion for Partial Summary Judgment [53] is GRANTED,

3. The Motion for Summary Judgment [57] is DENIED as moot,

4. The Motion for Summary Judgment [59] is GRANTED in part and DENIED in part,

5. This action is dismissed,

6. Plaintiff's claims based on the alleged conditions of his confinement are dismissed without prejudice.

6. Plaintiff's claims based the alleged violations of his First Amendment and Due Process Clause are dismissed with prejudice.

7. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

 SO ORDERED, this the 7th day of March, 2016.

        s/ Michael T. Parker
        United States Magistrate Judge

---

[8] In his Motion for Summary Judgment [57], Defendant Lee argues that he is entitled to judgment based on the merits of Plaintiff's conditions of confinement claims. In their Motion for Summary Judgment [59], the remaining Defendants argue, *inter alia*, that they are entitled to judgment based on the merits of Plaintiff's conditions of confinement claims. As the Court has found that Plaintiff failed to exhaust his administrative remedies with regard to these claims, Defendant Lee's Motion [57] will be denied as moot and that portion of the remaining Defendants' Motion [59] regarding the merits of Plaintiff's conditions of confinement claims will be denied as moot.